UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KERRY A. NOWAK | ) | |
|     Plaintiff, | ) | |
| v. | ) | 4:20-cv-00391 |
| | ) | JURY TRIAL DEMAND |
| WILLIAMS, INC. | ) | |
| and | ) | |
| DANIEL W. COSTELLO | ) | |
| and | ) | |
| JESSICA M. COSTELLO | ) | |
|     Defendants. | ) | |

## **COMPLAINT**

COMES NOW the plaintiff, by counsel, and for his complaint and causes of action states and alleges as follows:

### **PARTIES**

1. Plaintiff Kerry A. Nowak is a citizen and resident of Douglas County, Kansas.

2. Defendant Williams, Inc. d/b/a Williams Contracting (**"Williams"**) is a Missouri corporation lawfully incorporated in the State of Missouri. Williams' principal place of business and/or corporate headquarters is 26810 Ancient Cedar Dr., Warsaw, Missouri 65335. Williams conducts business in several states, including but not limited to Kansas, Missouri, Illinois, Indiana, and Kentucky. Williams may be served through its registered agent at the following address: 26810 Ancient Cedar Dr., Warsaw, Missouri 65335.

3. Defendant Daniel W. Costello is an individual residing in the State of Kansas. At all relevant times, Mr. Costello was the president and secretary of Williams, a member of the board of directors, and/or otherwise an officer, manager, major shareholder or other person who has charge of the affairs of Williams. Mr. Costello may be served at the following address: 7919 Darnell Ln., Lenexa, Kansas 66215.

4. Defendant Jessica M. Costello is an individual residing in the State of Kansas. At all relevant times, Ms. Costello was an officer, manager, major shareholder or other person who has charge of the affairs of Williams. Ms. Costello may be served at the following address: 7919 Darnell Ln., Lenexa, Kansas 66215.

5. At all relevant times, Plaintiff was an employee of the Defendants as defined in 42 U.S.C.A. § 2000e and RSMo § 290.528.

6. At all relevant times, the Defendants were all an employer as defined in 42 U.S.C.A. § 2000e and RSMo § 290.528.

## JURISDICTION

7. This Court has jurisdiction in this action pursuant to 42 U.S.C.A. § 2000e-5, as this matter is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as well as pursuant to 28 U.S.C. § 1331.

8. This judicial district has jurisdiction in this action pursuant to 42 U.S.C.A. § 2000e-5(f) because the unlawful employment practices alleged herein were committed in part in this judicial district, and Plaintiff would have worked in this judicial district but for the alleged unlawful employment practices alleged herein, and Williams has its principal office in this judicial district.

9. Venue in the Western Division of this judicial district is appropriate pursuant to Local Rule 3.2 because the Western Division includes worksites where part of Plaintiff's claims arose.

10. This court may exercise supplemental jurisdiction of all related state-law based claims pursuant to 28 U.S.C. § 1367.

11. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("**EEOC**") and the Missouri Commission on Human Rights.

12. Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC investigated the charge of discrimination and retaliation Plaintiff filed, and subsequently issued the Notice of Right to Sue on February 20, 2020, a true and accurate copy of which is attached hereto as Exhibit 1.

13. Plaintiff brings this action within ninety (90) days of the receipt of a Notice of Right To Sue.

14. All conditions precedent to filing suit have been performed or have occurred.

## FACTUAL ALLEGATIONS

15. Plaintiff was hired by Williams on or about September 5, 2018.

16. Plaintiff was employed as a laborer on Williams' playground construction crew.

17. Plaintiff was paid an hourly rate based on time worked plus additional compensation for travel and meals in the form of a stipend, per diem, or other similar additional compensation. At all relevant times, the state minimum wage in Missouri was $7.85 per hour.

18. Plaintiff was paid through paychecks issued by Williams listing the company's name and address of 26810 Ancient Cedar Drive, Warsaw, Missouri 65335.

19. Plaintiff worked on playground construction projects in several states, including Kansas, Missouri, Indiana, Kentucky, Colorado, and Illinois, and worked on a worksite in Kansas City, Missouri.

20. Plaintiff's work was supervised by Williams' employees Robert Simmons ("**Simmons**") and project manager Phillip Birkey ("**Birkey**").

21. Plaintiff was regularly subjected to unwelcome, hostile and offensive comments and behavior while he was employed, including comments of a sexually harassing nature, which affected his work, behavior, mood and attitude.

22. Simmons told Plaintiff to "suck his dick" and made comments about Plaintiff giving Simmons a "blow job."

3
Case 4:20-cv-00391-DGK   Document 1   Filed 05/18/20   Page 3 of 13

23. Simmons made comments or references to Plaintiff to "jack him off" or about Plaintiff "jacking him off."

24. Simmons told Plaintiff to "stick your finger in my ass."

25. On one occasion, Plaintiff asked if he could go to Home Depot to pick up supplies. Simmons responded, "okay, suck my dick first."

26. On other occasions, Plaintiff requested information or assistance from Simmons, and Simmons would reply that Plaintiff needed to first go to Simmons' hotel room at night and "do me a favor."

27. Simmons would regularly refer to Plaintiff as "sugar," "sweetie" or "honey."

28. Simmons would make the same offensive, sexually harassing comments to Plaintiff's coworkers and crewmembers in Plaintiff's presence or to Plaintiff and his crewmembers as a group.

29. Plaintiff had to listen to Simmons call Plaintiff's coworkers and crewmembers "niggers," tell them they had to give him a "goodbye blowjob," and other comments similar to those made directly to Plaintiff.

30. Plaintiff believed that an office employee, Laila, was the appropriate person to report his complaints to because she was one of the few Williams' employees that worked in the office, and her duties included accounting, payroll, and other typical human resources issues.

31. Plaintiff was aware that other Williams' employees had also told Laila about sexual harassment and other issues with Birkey and Simmons.

32. Plaintiff was never instructed who oversaw human resources or who he could report sexual harassment to since he was being harassed by two direct supervisors.

33. Plaintiff told Laila about Simmons' sexual harassment, the request for sexual favors, and the comments of a sexual nature that caused an intimidating, hostile, and offensive work environment.

34. Laila told Plaintiff that she would "get to the bottom of it." Laila never requested that Plaintiff put anything in writing or that she was not the appropriate person to report to regarding the workplace harassment.

35. Defendant Mr. Costello told Williams employees to ignore Plaintiff's complaints and that Plaintiff was a "cry baby" and a bad employee.

36. Defendants failed to take any remedial action to curtail or prevent Simmons' harassing of Plaintiff.

37. Simmons continued to harass Plaintiff after reporting his complaint and through the end of Plaintiff's employment.

38. Plaintiff tried to get Simmons to stop the harassing comments by saying things like "dude, stop it," or "dude, that is gross," but Simmons told Plaintiff "that's the way I am" or that Plaintiff needed "to get used to it."

39. On December 1, 2019, Plaintiff, Simmons, and a few other Williams' employees were working on a playground in Indiana.

40. Birkey was a project manager for the Indiana project.

41. Plaintiff sent a text message to Simmons letting him know that he was almost done with his portion of the project and apologized for something that happen the prior day.

42. Simmons responded 'It's ok you can give me a bj and we will call it good."

43. Plaintiff could not tolerate the abusive environment, comments, embarrassment, and humiliation any longer, so he finished his work on the Indiana project, got into the Williams' vehicle, and drove back to Kansas.

44. Before leaving the Indiana project, Birkey told Plaintiff that he could leave the Indiana project jobsite and return to Kansas because there was no work that could be performed due to wet weather conditions. Birkey told Mr. Costello that Plaintiff was leaving, and Mr. Costello confirmed to Birkey that this was approved.

45. Plaintiff was terminated by Mr. Costello over the phone on or about December 2, 2018 allegedly for leaving the Indiana job site despite Plaintiff having permission to leave the site one day earlier.

46. Despite the complaints made by Plaintiff to Williams, its agents, servants and/or employees, the Defendants failed and refused to terminate the course of conduct constituting sexual harassment and the hostile work environment, thereby condoning such illegal acts and transforming the acceptance of the sexual harassment of Plaintiff's supervisor into a term or condition of Plaintiff's continued employment.

47. The conduct of Simmons constituting sexual harassment and abuse was further ratified and condoned by the Defendants, in that Simmons sexually harassed other employees of Williams and such other acts of sexual harassment by Simmons was in fact known to the Defendants, its agents, servants and/or employees and the Defendants failed and refused to terminate or reprimand Simmons, thereby rendering it a policy of Williams that submission to sexual harassment is a term or condition of employment.

48. Plaintiff received a loan from Williams in the total amount of $300.00 in September, 2018.

49. Plaintiff fully repaid the $300.00 September 2018 loan no later than October 12, 2018.

50. Plaintiff received a loan from Williams in the total amount of $600.00 on October 26, 2018.

51. Plaintiff agreed in writing to repay Williams the entire $600.00 loan in accordance with a written loan repayment agreement executed on October 26, 2018.

52. Plaintiff repaid $500.00 of the $600.00 loan through authorized wage withholdings between the period of November 2 and November 30, 2018.

53. Plaintiff received his penultimate paycheck on November 30, 2018, covering the period of November 19 to November 25, during which time Plaintiff worked 9.2 hours at a base rate of $17.00/hour and earned additional compensation of $70.00.

54. Plaintiff's entire paycheck on November 30, 2018 was deducted so that his total pay was $0.00.

55. Plaintiff received his final paycheck on December 7, 2018, covering the period of November 26 to December 2, during which time Plaintiff worked 40.8 hours at a base rate of $17.00/hour and earned additional compensation of $175.00.

56. Defendants withheld $510.00 from Plaintiff's final paycheck for "loan repayment."

57. Plaintiff's total pay on his December 7, 2018 paycheck was $98.04.

58. Williams withheld from Plaintiff's pay a total of $1,310.00 for loan repayment even though the total loans paid to Plaintiff was only $900.00.

59. At the time that Williams withheld $510.00 from Plaintiff's final paycheck, Plaintiff only owed $100.00 to Williams for his loan repayment.

60. Plaintiff made a written demand to Defendants to pay him for the unauthorized amounts withheld from his paychecks, but Defendants refused and ignored his request.

61. The amounts withheld from Plaintiff's final paycheck reduced his wages to below the minimum wage required under the Fair Labor Standards Act, 29 U.S.C. 201 et seq., and the minimum wage required under Missouri law.

## COUNT I – 42 U.S.C. § 2000e-2

62. Plaintiff incorporates by reference the allegations contained in paragraphs 1 – 61.

63. Defendant, its agents, servants and/or employees, by their conduct herein alleged, intentionally, willfully and without justification, did deprive the Plaintiff of his rights, privileges and immunities secured to him by the Constitution and the laws of the United States, particularly his right to be free from sexual discrimination and harassment and his rights as provided by Title VII of the Civil Rights Act of 1964, § 701, et seq., as amended 42 U.S.C. § 2000e, et seq.

64. The aforementioned unlawful employment practices were intentional.

65. The aforementioned unlawful employment practices were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

66. As a result of the events and actions described above, Plaintiff was deprived of wages, benefits and job training; subjected to emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation; and was otherwise adversely affected as an employee.

WHEREFORE, Plaintiff prays that the Court order Defendants to pay Plaintiff (a) appropriate backpay with prejudgment interest; (b) compensation for past and future pecuniary losses; (c) compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation; (d) punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial; and, (e) such additional relief as justice may require, together with Plaintiffs costs, attorneys fees, and disbursements in this action.

## COUNT II – 42 U.S.C. § 2000e-3

67. Plaintiff incorporates by reference the allegations contained in paragraphs 1 – 66.

68. Defendants, its agents, servants and/or employees, by their conduct herein alleged, retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, § 701, et seq., as amended 42 U.S.C. § 2000e, et seq, by terminating his employment because he opposed employment practices that he reasonably believed to be unlawful under Title VII, including reporting, complaining about, and/or opposing discrimination.

69. The aforementioned unlawful employment practices were intentional.

70. The aforementioned unlawful employment practices were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

71. As a result of the aforementioned events and actions, Plaintiff was deprived of equal employment opportunities in retaliation for exercising his federally protected rights.

72. As a result of the aforementioned events and actions, Plaintiff was deprived of wages, benefits and job training; subjected to emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation; and was otherwise adversely affected as an employee because of his opposition to discrimination.

WHEREFORE, Plaintiff prays that the Court Order Defendant to pay Plaintiff (a) appropriate backpay with prejudgment interest; (b) compensation for past and future pecuniary losses; (c) compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation; (d) punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial; and, (e) such additional relief as justice may require, together with Plaintiffs costs, attorneys fees, and disbursements in this action.

## COUNT III – UNDERPAYMENT OF WAGES

73. Plaintiff incorporates by reference the allegations contained in paragraphs 1 – 72.

74. During the period of November 19 to November 25, 2018, Plaintiff worked at least 9.2 hours for Defendants and earned additional compensation of $70.00

75. For the period of November 19 to November 25, 2018, Defendants paid Plaintiff $0.00.

76. For the period of November 19 to November 25, 2018, Defendants paid wages to Plaintiff below the minimum wage required under the Fair Labor Standards Act, 29 U.S.C. 201 et seq., or the minimum wage required under the Missouri Minimum Wage Law, whichever rate per hour is higher pursuant to RSMo sections 290.500 to 290.530.

77. During the period of November 26 to December 2, 2018, Plaintiff worked at least 40.8 hours for Defendants and was entitled to additional compensation in the amount of $175.00.

78. For the period of November 26 to December 2, 2018, Defendants paid Plaintiff $98.04.

79. For the period of November 26 to December 2, 2018, Defendants paid wages to Plaintiff below the minimum wage required under the Fair Labor Standards Act, 29 U.S.C. 201 et seq., or the minimum wage required under the Missouri Minimum Wage Law, whichever rate per hour is higher pursuant to RSMo sections 290.500 to 290.530.

80. As a result of the foregoing, Defendants paid Plaintiff less wages than the wages to which the employee is entitled under or by virtue of sections RSMO sections 290.500 to 290.530.

81. Pursuant to RSMO sections 290.500 to 290.530, Defendants are liable to Plaintiff for the full amount of the wage rate and an additional amount equal to twice the unpaid wages as liquidated damages, and for costs and reasonable attorney fees.

WHEREFORE, Plaintiff prays for judgment against Defendants for such damages as are fair and reasonable, for his attorney's fees and costs, for exemplary or punitive damages in an amount that is fair and reasonable, for statutory interest and liquidated damages, and such other and further relief as the Court may deem just, fair and equitable.

## COUNT IV – UNJUST ENRICHMENT

82. Plaintiff realleges and incorporates by reference paragraphs 1 – 81 as if fully set forth herein.

83. Plaintiff borrowed from Williams the total sum of $900.00.

84. Williams took from Plaintiff's the total sum of $1,310.00.

85. Williams, without Plaintiff's permission or consent, wrongfully withheld from Plaintiff's paychecks the amount of $410.00.

86. Williams has been enriched or have benefitted by their deficient payments to Plaintiff for work performed and/or through withholding from Plaintiff's final paychecks amounts owed to Plaintiff for which Williams has no lawful claim to possess and keep.

87. Such enrichment or benefit was received by Williams at Plaintiff's expense because he was not fully compensated for his work and/or his earnings were taken without justification by Williams.

88. Plaintiff reasonably expected to receive his wages for work performed without any set off more than amounts borrowed from Williams, in accordance with applicable law.

89. Williams intentionally and with bad faith refused to pay Plaintiff at the proper and lawful rates and withheld from his pay amounts owed to him.

90. It is unjust for Williams to retain the benefits from the unpaid work performed by Plaintiff and/or the earnings owed to Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Williams for such damages as are fair and reasonable, for his attorney's fees and costs, for exemplary or punitive damages in an amount that is fair and reasonable, and such other and further relief as the Court may deem just, fair and equitable.

## COUNT V – BREACH OF CONTRACT

91. Plaintiff realleges and incorporates by reference paragraphs 1 – 90 as if fully set forth herein.

92. Plaintiff and Williams had a written agreement pursuant to which Williams loaned to Plaintiff the total sum of $900.00 in September and October 2018.

93. Plaintiff agreed to repay Williams in accordance with a repayment schedule set forth in the written agreements, in the total amount of $900.00.

94. Williams withheld from Plaintiff's pay a total of $1,310.00 for the loan repayment even though the total loan paid to Plaintiff was only $900.00.

95. Plaintiff performed his obligations under the agreement by repaying wages each pay period in accordance with the terms of his written agreements with Williams.

96. Williams breached the agreements by withholding from Plaintiffs wages amounts totaling $1,310.00 even though the agreement was that Plaintiff would only pay to Williams $900.00.

97. Plaintiff has been thereby damaged in the minimum amount of $410.00.

WHEREFORE, Plaintiff prays for judgment against Williams for such damages as are fair and reasonable, for his attorney's fees and costs, for exemplary or punitive damages in an amount that is fair and reasonable, and such other and further relief as the Court may deem just, fair and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Respectfully Submitted by:

BEAM-WARD, KRUSE, WILSON & FLETES, LLC

/s/ Richard S. Fisk
RICHARD S. FISK, MO # 61286
8645 College Boulevard, Suite 250
Overland Park, Kansas 66210
(913) 339-6888/ (913) 339-9653 (Fax)
rfisk@bkwflaw.com
ATTORNEYS FOR PLAINTIFF